## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**JESSE C. NOBLES,**

       **Plaintiff,**

**v.**                                                 **Case No.  8:05-cv-1850-T-TBM**

**MICHAEL J. ASTRUE,**[1]
**Commissioner of the United States**
**Social Security Administration,**

       **Defendant.**

_____/

## O R D E R

     The Plaintiff seeks judicial review of the denial of his claim for Social Security disability benefits.  For the reasons set out herein, the decision is reversed and remanded.

### I.

     Plaintiff was fifty years of age at the time of his administrative hearing on remand. Plaintiff has a seventh grade education.  His past relevant work was as a drywall hanger. Plaintiff applied for disability benefits in June 2001, alleging disability as of May 23, 2001, by reason of herniated discs in the neck and lower back.  The Plaintiff's application was denied originally and on reconsideration.  The Plaintiff, at his request, then received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ").  The first such hearing on October 17, 2002, was postponed so that a report from Dr. Stephen Fields could be obtained.

---

[1]Michael J. Astrue became Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Commissioner Jo Anne B. Barnhart as the Defendant in this suit.

At the subsequent hearing on January 29, 2003, Plaintiff and his wife both testified that he was no longer able to work because of constant pain in his back.  By decision dated April 7, 2003, Plaintiff's application was denied upon the ALJ's conclusion that Plaintiff was capable of a significant range of light exertional work.  (R. 51- 62).  On July 9, 2003, the Appeals Council granted Plaintiff's request for review and remanded the case for further consideration and development of the record.  (R. 63- 65).  The initial hearing on remand was scheduled for January 23, 2004.  At that hearing, the ALJ was advised that Plaintiff's counsel had withdrawn.  After discussions with the Plaintiff, it was agreed that the hearing would be postponed and a consultative physical examination would be obtained.  After new counsel was retained, she requested a consultative mental examination as well.  This was ordered but the evaluation did not occur prior to the hearing, which was finally conducted on June 14, 2004.

The Plaintiff was represented at the hearing and testified in his own behalf.  Additionally, Plaintiff's wife again testified and a vocational expert was again called by the ALJ.  Plaintiff initially testified that he had a seventh-grade education and could not write "at all" and could only read "a little."  He spent thirty-one years hanging dry wall for a living.  In essence, Plaintiff testified that he is unable to work because of back, neck, and shoulder pain.  He stated that before he stopped working, he missed work a couple of times a year for two to three weeks at a time because of his pain.  He described the pain in his back as constant and "excruciating, like somebody was stabbing you with a knife and twisting."  Plaintiff further stated the pain went down his right leg and he would have to drag his leg.  He testified that when he sits for long periods of time his arms and legs go numb and he is unable to get up or down without assistance and requires the use of a staff or cane.  He also wears a back brace,

off and on, which was prescribed by a doctor several years ago.  Plaintiff also complained of

constant pain and tingling with limitations in his left shoulder, arm and hand.  Thus, he cannot

lift his left arm behind his back and he is unable to lift anything with that arm.  Plaintiff also

claimed problems with his left foot from a childhood accident.  He cannot put much pressure

on that foot.

Plaintiff testified he spends four to five hours a day lying on his back to help alleviate

the pain in his back, shoulder, and neck.  He stated his pain medication makes him drowsy, he

has difficulty concentrating and sleeping at night, and his memory has been effected.  He does

not socialize.  Plaintiff indicated he could sit and stand for thirty to forty minutes only before

pain and numbness set in.   He estimated he could walk about a half block but would become

winded and his back would start to hurt.  He can lift approximately two pounds.  Plaintiff also

claimed he could not squat, kneel or bend over.  <u>See</u> Plaintiff's testimony (R. 486-511).

Debra Nobles, Plaintiff's wife, corroborated Plaintiff's testimony concerning his

constant pain and the emotional affect of his inability to work.  By her testimony, he is mad

and angry, upset over the fact that he is unable to work, and stays in his room frequently,

without talking to anyone.  When his back goes out, she has to assist him even with dressing.

She also confirmed that he cannot read or write.  <u>See</u> Mrs. Nobles' testimony (R.512-517).

Jeffrey Carlisle, a vocational expert (hereinafter "VE"), testified upon an assumption

of a person with Plaintiff's age, education and work experience capable of light work with a

sit/stand option and occasional limitations for bending, stooping, crouching, kneeling, and

prolonged standing, but capable of performing routine, simple tasks that allowed for a change

of position at will.  Under this hypothetical, the person could perform the jobs of garment

sorter, assembler, and packager.  Assuming limitations for lifting and carrying less than ten

3

pounds, standing and/or walking less than two hours in an eight-hour day, and sitting for less than six hours in an eight-hour day, with limitations in pushing and pulling in all extremities, and no climbing, balancing, kneeling, crouching, crawling, stooping, and further limitations in reaching in all directions, with manipulative limitations as well, or if such person had to lie down during the day as often as Plaintiff claimed, such person could not work at any job.  If such person's medications affected him to the point that he could not concentrate, maintain persistence and pace, he could not work at any jobs.  See VE's testimony (R. 517-22).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are set out herein as necessary.

By his decision of November 23, 2004, the ALJ determined that while Plaintiff has severe impairments related to an adjustment disorder and degenerative disc disease of the lumbar spine, he nonetheless had the residual functional capacity to perform a restricted range of light exertional work.  Upon this finding and the testimony of the VE, the ALJ concluded that, while Plaintiff was unable to perform his past relevant work, he could perform jobs available to him in the local and national economy.  Upon this conclusion, the Plaintiff was determined to be not disabled.  (R. 20-31).  The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous

period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. See id. at § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Commissioner must apply the correct law and demonstrate that he has done so.  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989 (5th Cir. 1963).  Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that

the claimant is not disabled.  Miles, 84 F.3d at 1400; Bloodsworth v. Heckler, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

### III.

The Plaintiff raises four claims on this appeal.  As stated by the Plaintiff, they are as follows:

(1)  Did the ALJ properly evaluate the combined effects of all impairments and subjective symptoms?

(2)  Did the ALJ properly consider Claimant's mental impairment?

(3)  Did the ALJ fully consider whether Claimant, upon reaching age 50, met Rule 201.10 of 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1? and

(4)  Does new, material evidence justify remand of this case?

Because Plaintiff's third claim warrants a remand, it is the only claim addressed in full.  By this claim, Plaintiff takes issue with the ALJ's finding that he is capable of performing "light work."[2]  First, Plaintiff points out that because he could lift only up to eight

---

[2]Light work is defined as work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  A job in this category may require a good deal of walking or standing, or sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, the claimant must have the ability to do substantially all of these activities.  20 C.F.R. § 404.1567(b).

6

pounds frequently and up to twelve pounds occasionally and required a sit/stand option, his

exertional capacity for work more closely resembled that of sedentary work.[3]  As such, had the

ALJ applied the sedentary exertional work grid rule instead of the light exertional grid rule,

given that he had a limited education and no transferable skills, application of the pertinent

rule would have mandated a finding of disability.  Second, Plaintiff suggests that the ALJ

should have altered his hypothetical question to the VE to more accurately reflect his lifting

limitations.  (Doc. 17 at 17-18).  The Commissioner counters that there is no support for

Plaintiff's contention that he is limited to sedentary work such that Rule 201.10 should have

been utilized by the ALJ to find him disabled.  As for Plaintiff's lifting ability, the

Commissioner essentially urges that the ALJ's determination that Plaintiff retained the ability

to perform light exertional work is supported by substantial evidence.  (Doc. 18 at 10-13).

Here, setting aside disability opinions, the record before the ALJ contained five main

medical source statements concerning Plaintiff's residual functional capacity.  In July 2001, a

non-examining state agency doctor concluded that Plaintiff retained the ability to perform

light exertional work.  (R. 269-76).  Four months later, another non-examining doctor

concluded that Plaintiff could perform light exertional work with occasional postural

limitations.  (R. 313-20).  Thereafter, in January 2002 and upon request of the Office of

Disability Determinations (hereinafter "ODD"), Robert Martinez, M.D., a neurologist,

performed a consultative examination of the Plaintiff.  Dr. Martinez concluded that Plaintiff

---

[3]Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  20 C.F.R. § 404.1567(a).

should not lift more than ten pounds from a bent position; should not have to sit, stand, or walk for more than an hour or two at a time; and needed to take breaks several times a day. (R. 340).   Then, in November 2002, Plaintiff underwent a functional capacity evaluation.   The results from that evaluation indicated that Plaintiff "displayed the ability to perform work in the light category, as defined by the U.S. Department of Labor, for an eight hour day.   This is with occasional lifting."   (R. 358).   More specifically, the report revealed that Plaintiff demonstrated an ability to occasionally lift twelve pounds and frequently lift eight pounds. (R. 361).   Finally, in March 2004, Dr. Hasan Zeya performed a consultative evaluation of the Plaintiff, also upon request of the ODD.   Dr. Zeya opined that Plaintiff could occasionally lift and/or carry less than ten pounds, stand and walk less than two hours in an eight-hour day, sit for less than six hours in an eight-hour day, perform limited pushing and pulling with the upper and lower extremities, perform occasional manipulative tasks including reaching, and never climb, balance, kneel, crouch, crawl, or stoop.[4]   (R. 377-79).

After addressing these opinions and the other medical evidence of record, the ALJ determined that Plaintiff retained the ability to:

> . . . occasionally lift and carry up to twenty pounds and
> frequently lift and carry up to ten pounds.   He requires a
> sit/stand option with occasional limitations for bending,
> stooping, crouching, kneeling and prolonged standing.   He is
> capable of performing routine, simple tasks.

(R. 28, 30).   In fashioning this determination, the ALJ did not accord controlling weight to Dr. Martinez's opinion.[5]   (R. 23).   The ALJ also did not mention the opinions of the non-

---

[4]On the form Dr. Zeya filled out it was written "not sure if patient is not malingering. Too much subjective pain for too little activity."   (R. 377).

[5]Plaintiff does not explicitly challenge his failure to do so.

8

examining doctors and, while he acknowledged that the lifting limitation of twelve pounds as reported in the functional capacity evaluation did not "comport with the strict definition of light work as defined by the U.S. Department of Labor," he noted that the assessment recorded an isometric push and pull ability that averaged 31 pounds and 44 pounds.[6]  (R. 24). As for Dr. Zeya's opinion, the ALJ recounted it and stated only that the doctor "added that he was not sure whether the claimant was malingering as he voiced many subjective complaints of pain."  (R. 25).

Upon careful consideration, I conclude that the ALJ erred by failing to state with particularity the weight given different medical opinions and the reasons therefor when determining Plaintiff's residual functional capacity, and his failure to do so constitutes reversible error.  See MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir.1986).  While the ALJ seemingly credited the results of the functional capacity evaluation, his determination that Plaintiff retained the capacity to lift and/or carry 20 pounds and could therefore perform light exertional work is not supported by the evaluation.  To the extent the ALJ relied on the isometric pushing and pulling abilities reported in the evaluation (R. 24), I do not find that an isometric push and pull ability averaging 31 pounds and 40 pounds equates with the ability to occasionally lift and/or carry 20 pounds.  Notably, the only evidence that supports the ALJ's finding that Plaintiff could perform the lifting requirements of light work are the opinions of the non-examining doctors and the ALJ did not address those opinion in his decisions.  As

---

[6]Previously, in vacating the ALJ's prior decision issued on April 17, 2003, the Appeals Council directed the ALJ to "further evaluate and clarify the inconsistencies of the Functional Capacity Evaluation performed on November 14, 2002, indicating that the claimant could perform light work, yet noted the claimant could occasionally lift 12 pounds and frequently lift 8 pounds."  (R. 20).

Plaintiff suggests, it certainly appears that the ALJ selectively relied on certain aspects of the record to conclude that Plaintiff could perform a restricted range of light work.  To do so is improper.  See McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986) (providing that it is improper for an ALJ to focus on one aspect of the evidence while disregarding or ignoring other contrary evidence).  On remand, the ALJ shall, at a minimum, credit the *lifting* limitations set forth in the functional capacity evaluation.  See (R. 358, 61).  Furthermore, it appears that the ALJ credited the Dr. Zeya's opinion.  (R. 25).  Had he done so, however, Plaintiff arguably would have been found disabled.  See (R. 377-79).  On remand, the ALJ shall also clarify the weight accorded all aspects of Dr. Zeya's opinion on Plaintiff's ability to work and the reasons therefor.  To the extent necessary, the ALJ shall also reconsider the weight accorded to Dr. Martinez's opinions.  The medical reports generated after the ALJ rendered his opinion shall also be considered.

Because remand is required on the above grounds, the other issues raised by Plaintiff need not be addressed.  See Jackson v. Bowen, 801 F.2d 1291, 1294 n. 2 (11th Cir. 1986) (stating that where remand is required, it may be unnecessary to review other issues raised). However, in order to avoid future allegations of error, it is worth noting that Plaintiff's claimed neck and shoulder impairments easily surpass the threshold severity requirements, and the ALJ should address these impairments and related symptoms throughout the sequential analysis.  The ALJ would also be well advised to address the import, if any, of Dr. Perry's assessment of Plaintiff's claimed mental impairment.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards.  The decision is reversed and remanded for further proceedings before the Commissioner consistent with this Order.  Accordingly, the Clerk is directed to enter Judgment in favor of the Plaintiff and to close the case.

**Done and Ordered** at Tampa, Florida, this 27th day of March 2007.


THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record

11